**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| JUSTIN S. FARA, | ) | Case No. 21-05434 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| CHOP FOO, LLC, | ) | |
| | ) | Adversary No. 21-00117 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JUSTIN S. FARA, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S PRETRIAL BRIEF**

Plaintiff Chop Foo, LLC ("Chop Foo"), by and through its attorneys, files its Pretrial Brief, and states as follows:

**WHAT THE EVIDENCE WILL SHOW**

Justin Fara ("Fara") was the sole owner and proprietor of BJ Construction Group, LLC ("BJC"), a general contracting company. Fara utilized BJC, and the funds of its customers, as a sort of Ponzi scheme. His general mismanagement of BJC, coupled with personal financial difficulties, led him to utilize BJC's bank accounts, funded by BJC's clients, as his personal slush fund. Fara commingled the funds from various construction projects, including those of Chop Foo and Brad Wiener, utilizing them to pay personal expenses, such as luxury vehicles, a luxury yacht rental, and personal gambling expenses. After his personal and corporate expenses were paid, he used the remaining funds to advance whatever project was closest to the next payday. Fara's use

of Chop Foo, along with others, as his personal ATM drove a fraudulent scheme to enrich himself at the expense of his clients, including Chop Foo.

In October of 2018, Chop Foo contracted with BJC for the renovation of two residential units at its property located at 1560 N. Damen Avenue in Chicago, Illinois (the "Project"). The parties' contract and rider (together, the "Contract") called for a series of payments triggered by BJC achieving completion landmarks of the Project. Between October 5, 2018, and January 31, 2019, Chop Foo paid BJC a total of $395,589.30, pursuant to the Contract and the information that BJC, as directed by Fara, provided to Chop Foo. As time went by, however, it became clear to Chop Foo that the Project was not on schedule and the work was not being performed. Ultimately, in July of 2019, Chop Foo opted to terminate the Contract and hired another contractor to remove the work performed by BJC and complete the necessary work to render the units habitable.

When Chop Foo's overtures to resolve the situation with Fara went unanswered, Chop Foo filed an action in the Circuit Court of Cook County, Illinois to recover its damages (the "State Court Action"). On January 8, 2021, Chop Foo obtained a default judgment against BJC in the amount of $620,847.60 (the "Judgment"). Fara filed his Chapter 7 bankruptcy petition on April 26, 2021, and included the Judgment as a non-priority unsecured claim against him. *See* Official Form 106E/F, Schedule E/F: Creditors Who Have Unsecured Claims [Dkt. No. 1], at 4.2, *In re Justin S. Fara*, Case No. 21bk05434 (Bankr. N.D. Ill. filed April 26, 2021).

During the course of discovery in this adversary proceeding, Chop Foo learned that Fara misappropriated funds from multiple projects for improper personal and company expenses. Fara misled his clients, and their FDIC insured lenders, by lying to them regarding what work had been done and what would be done with the funds when paid. Fara's fraud excludes him from receiving the benefits of the Bankruptcy Code and this Court.

**STATEMENT OF LEGAL ISSUES AND ARGUMENT**

While a central purpose of the Bankruptcy Code is to provide debtors a fresh start, that opportunity is limited to the "honest but unfortunate debtor." *Grogran v. Garner*, 498 U.S. 279, 286-87 (1991) (internal quotation omitted). In furtherance of this policy, exceptions to the discharge of a debt are strictly construed against the creditor, who must establish an exception to discharge by a preponderance of the evidence. *In re Sneed*, 543 B.R. 848, 857-58 (Bankr. N.D. Ill. 2015) (internal citations omitted).

Chop Foo is owed a debt by Fara in the amount of $620,847.60, which represents the full amount of the Judgment. Chop Foo asserts that $395,589.30 of the Judgment, which is the amount Chop Foo paid to BJC (the "Payment Debt") is non-dischargeable pursuant to both 11 U.S.C. §523(a)(2)(A) and 11 U.S.C. §523(a)(4). Chop Foo is also entitled to recover its attorneys' fees from Fara.

**I. The Judgment is a Debt against Fara in Chop Foo's favor**

As a preliminary matter, to avail itself of Section 523, a creditor must first establish that it is owed a debt by the debtor. 11 U.S.C. § 523(a). Chop Foo satisfies this requirement because the Judgment entered in Chop Foo's favor against BJC constitutes a debt against Fara. First, the Bankruptcy Code defines a debt as "liability on a claim". 11 U.S.C. § 101(12); *see McCullough v. Suter (In re Suter)*, 59 B.R. 944, 946 (Bankr. N.D. Ill. 1986) ("[t]he district court judgment here clearly is a debt for money under the Bankruptcy Code").

Further, while the Judgment was entered against BJC, Fara is personally liable because he actively participated in BJC's tortious actions. *Groom v. Krook (In re Krook)*, 615 B.R. 479, (Bankr. N.D. Ill. 2020). Fara acknowledged that the Judgment against BJC is a debt against him personally – he included the Judgment as an unsecured claim against him in his bankruptcy filing,

as discussed above. As the sole member, manager, and active principal in BJC, Fara was the one who designed and implemented the scheme to appropriate the funds paid to BJC by Chop Foo.

## II. Fara obtained the Payment Debt through False Representations

A debt is excepted from discharge under Section 523(a)(2)(A) to the extent it was obtained by false pretenses, a false representation, or actual fraud. To except a debt from discharge based on false pretenses or a false representation, the creditor must demonstrate: "(1) the debtor made a false representation or omission of fact; (2) which the debtor (a) knew was false or made with reckless disregard for its truth, and (b) made with an intent to deceive; and (3) upon which the creditor justifiably relied." *Sneed*, 543 B.R. at 858.

### A. Fara Made Several Misrepresentations of Fact and Created a False Impression

The emails requesting payment that Tomer Blackburn sent to Michael Mertz on November 27, 2018 (the "November Request") and January 24, 2019 (the "January Request") were sent at the direction of Fara. These emails contain misrepresentations of fact for multiple reasons. First, they misrepresent the level of completion of the Project. The Contract specifically called for payments to be made by Chop Foo upon BJC reaching certain percentages of completion of the Project. When the November Request was sent stating that the Project was 40% complete, the Project was not actually 40% complete, but was at most only 10% to 15% complete – although this was not known or knowable to Chop Foo at the time. When the January Request was sent stating that the Project was 60%, the Project was not actually 60% complete, but was no further along than it previously had been at the time of the November Request. Fara instructed his employee to send emails requesting the next payment under the Contract that included false statements of fact.

Furthermore, Fara engaged in false pretenses with respect to the use of the payments made pursuant to the Contract. False pretenses "include implied misrepresentations or conduct intended

4

to create or foster a false impression." *Deady v. Hanson (In re Hanson)*, 432 B.R. 758, 771 (Bankr. N.D. Ill. 2010) (internal citation omitted). This Court has further defined false pretenses as "usually, but not always, the product of multiple events, acts or representations undertaken by a debtor which purposely create a contrived and misleading understanding of a transaction . . . ." *Id.* (*quoting Sterna v. Paneras (In re Paneras)*, 195 B.R. 395, 406 (Bankr. N.D. Ill. 1996)). The November Request and the January Request both mention the payments that need to be made, including ordering windows, and paying subcontracts for plumbing, HVAC, and electrical work. These statements were false and misleading. The records produced by Fara demonstrate that very few of the payments he alluded to repeatedly were ever made. Fara, and BJC at Fara's direction, misled Chop Foo throughout the course of the Project while utilizing the Payment Debt for items completely unrelated to the Project.

B. <u>Fara Knew the Representations Were False</u>

As discussed above, the deposition testimony of Fara's employee, Tomer Blackburn, and records produced by Fara demonstrate that Fara knew the Project was not progressing as was communicated in the November Request and in the January Request. Further, Fara directed Mr. Blackburn to reference different items, including windows and subcontractor deposits, in these communications, despite the fact that no such payments were actually intended.

C. <u>Fara Intended to Deceive Chop Foo</u>

A debtor's intent to deceive "may be determined from the totality of the circumstances of a case and may be inferred when the facts and circumstances present a picture of deceptive conduct on the debtor's part." *Cent. Credit Union of Ill. v. Logan (In re Logan)*, 327 B.R. 907, 911 (Bankr. N.D. Ill. 2005) (*quoting In re Scott*, 294 B.R. 620, 628, 633 (Bankr. W.D. Pa. 2003)). Misleading a creditor as to how funds will be utilized is a form of deceptive conduct illustrative of intent. *Deady v. Hansen*, 432 B.R. at 778 (inferring an intent to deceive where the debtor "knowingly

misrepresented and misled" the creditor as to use of requested loan proceeds). Fara misled Chop Foo on numerous occasions, both through express written false statements and through a pattern of behavior intended to mislead. His intent was to obtain the Payment Debt for costs he and BJC had that were unrelated to the Project, all the while justifying payments by listing out items and costs that were in fact necessary for the Project, but never actually funded.

D. Chop Foo's Reliance on Fara's Statements and Conduct was Justifiable

To satisfy the final prong required to except a debt from discharge under this section, a creditor must demonstrate that it justifiably relied on the debtor's false representation or false pretenses. "Justifiable reliance is a less demanding standard than reasonable reliance and does not mean that the creditor's conduct must conform to the standard of a reasonable man." *Sneed*, 543 B.R. at 859 (internal quotation omitted). Notably, this standard does not require a creditor to investigate the debtor's statements or conduct "unless the falsity of the representation is readily apparent." *Deady*, 432 B.R. at 773 (*citing Field v. Mans*, 516 U.S. 59, 70-72 (1995)). Implied within the requirement of reliance is causation – a creditor must show that the false representation or false pretenses was the cause of the debt the creditor seeks to exempt from discharge. *Sneed,* 543 B.R. at 860.

Chop Foo relied on the statements of BJC when making payments pursuant to the November Request and the January Request. At that point, Chop Foo had no reason not to trust BJC and Fara, and no duty to investigate the information conveyed in those communications. Chop Foo would not have advanced the next payments under the Contract absent the information contained in the November Request and in the January Request. *See Deady*, 432 B.R. at 778-79 (concluding creditor justifiably relied on debtor's misrepresentations because creditor trusted debtor, had no duty to further investigate debtor's misrepresentation regarding use of loan proceeds, and would not have invested funds but for the misrepresentation).

6

Fara engaged in a scheme in which he used payments from one client to advance other projects and address his personal financial needs. Ultimately, the entire Payment Debt was obtained as part of this fraudulent scheme – there was a constant need for BJC to obtain cash from clients to satisfy personal and company expenses. Cash first went to these personal expenses, then to whatever project would fund the next payout. When Chop Foo entered into the Contract, it trusted BJC – and Fara – to advance the project with the funds paid. It had no reason to believe that any of the Payment Debt would be misdirected for Fara's personal use, and trusted that the Payment Debt would be used to complete the Project per the terms of the Contract. Chop Foo never would have contracted with BJC if it had known Fara's intentions, and would not have made payments if it knew Fara's actual intended use for the funds. The entire Project was tainted by Fara's scheme to misuse Chop Foo's funds, rendering the Payment Debt exempt from discharge under Section 523(a)(2)(A). *See Logan*, 327 B.R. at 918 (holding the entire deal between debtor and creditor "tainted by the misrepresentation," that debtor did not intend to use creditor's funds for the stated purpose).

Finally, Fara's misdirection of the Payment Debt to Fara personally and to other projects left the Chop Foo project woefully under-performed. Work was shoddy, and advanced only to the extent the limited funds applied to the Project would allow. This ultimately rendered what little work was actually performed by BJC useless. Chop Foo was required to hire a replacement contractor, and paid to tear out and replace BJC's useless and shoddily-performed work. Accordingly, Fara should not be entitled to discharge of any portion of the Payment Debt.[1]

---

[1] In the event this Court determines that some portions of the Payment Debt were not obtained by fraud, the Court should only allow the discharge of those portions of the Payment Debt that Fara proves were utilized for work that benefitted Chop Foo's Project.

7

### III. The Payment Debt is exempt from Discharge under Section 523(a)(4)

Section 523(a)(4) exempts from discharge any debt obtained by "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). The Payment Debt should be deemed nondischargeable for two reasons. First, Fara's misuse of the Payment Debt constitutes embezzlement. Second, Fara engaged in fraud or defalcation of the Payment Debt while acting in a fiduciary capacity.

#### A. Fara Appropriated the Payment Debt for His Own Benefit

Embezzlement under Section 523(a)(4) is "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Chriswell v. Alomari (In re Alomari)*, 486 B.R. 904, 915 (Bankr. N.D. Ill. 2013). A creditor seeking to exempt a debt from discharge due to embezzlement must demonstrate that the debtor "appropriated the subject funds for his own benefit and did so with fraudulent intent or deceit." *Id.* (*citing In re Weber*, 892 F.2d 534, 538 (7th Cir. 1989)). Chop Foo made payments for BJC to utilize for the Project. Instead, BJC, and Fara specifically, utilized the Payment Debt to cover Fara's personal expenses and to advance projects for other customers, unrelated to Chop Foo or the Project, so that Fara could obtain more funds to use for his personal benefit. Any argument by Fara that the Contract did not require BJC to utilize the Payment Debt for the Project are disingenuous. The Contract called for improvements to be made to the Property by BJC. The payments outlined in the Contract were to be utilized for materials and labor. Of course the Contract built in a profit to BJC and Fara. But Fara cannot suggest that nearly all of the payments due under the Contract were profits – and had Chop Foo known that its funds were not being used for the Project, it would not have made the requested payments.

#### B. Fara Engaged in Fraud or Defalcation of the Payment Debt

8

To exempt a debt from discharge under this prong of Section 523(a)(4), a creditor must establish that: (1) an express trust existed; (2) the debt was caused by fraud or defalcation; and (3) the debtor acted as a fiduciary to the creditor at the time the debt was created. *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir. 1987). The first inquiry is whether a trust was created, establishing a fiduciary relationship between Fara and Chop Foo. *See Lefelstein v. Donlevy (In re Donlevy)*, 342 B.R. 774, 781 (Bankr. N.D. Ill. 2006) (noting that a trustee and beneficiary under an express trust have a fiduciary relationship). Illinois state law governing express trusts is relevant to this question. *Id.* at 780. Under Illinois law, the requirements of a valid trust are: (1) the parties' intent to create a trust, which may be shown by a declaration of trust or circumstantial evidence; (2) a definite subject matter of trust property; (3) ascertainable beneficiaries; (4) a trustee; (5) specifications of a trust purpose and how the trust is to be performed; and (6) delivery of trust property to the trustee. *Id.* at 781 (*citing In re Estate of Wilkening*, 109 Ill. App. 3d 934, 940-41 (1st Dist. 1982)). The relationship between Chop Foo and Fara, as principal of BJC, created an express trust. The Contract evidences the parties' intent: the Payment Debt is the trust property; Chop Foo is the beneficiary; Fara, on behalf of BJC, is the trustee; the purpose of the trust was completion of the Project and the Payment Debt was to be utilized to advance the same; and Chop Foo delivered the trust property to the trustee by issuing a series of checks that were drawn on Chop Foo's bank account and paid to BJC in reliance on BJC's representations that the trust property would be used to advance Chop Foo's project. *See id.* (holding that an express trust was created between homeowner creditors and debtor contractor due to payment of material deposit as part of the construction contract). As the trustee of the trust created when Chop Foo paid the Payment Debt, Fara, as principal of BJC, owed Chop Foo fiduciary duties with respect to the trust property.

Moving to the "fraud or defalcation" portion of Section 523(a)(4), defalcation has not been clearly defined within the context of this provision of the Bankruptcy Code, but the Seventh Circuit has "required something more than mere negligence or mistake, but less than fraud." *Lefelstein*, 342 B.R. at 782. Fara's conduct with respect to the Payment Debt as discussed above is plainly "more than mere negligence or mistake." Notably, defalcation does not require intent or bad faith. *Id.* (*citing Rae v. Scarpello (In re Scarpello)*, 272 B.R. 691, 702 (Bankr. N.D. Ill. 2002)). BJC and Fara did not have the right to utilize the Payment Debt for expenses outside the scope of the Contract. While depositing funds into a general business account may not, alone, constitute defalcation, using the Payment Debt for Fara's personal expenses and to further BJC's progress on other customers' projects was a misappropriation of the Payment Debt – particularly given BJC's statements to Chop Foo when requesting the payments that those payments would be used to advance the Project. This, combined with BJC and Fara's fiduciary obligation to Chop Foo with respect to the Payment Debt renders the Payment Debt nondischargeable under Section 523(a)(4).

WHEREFORE, Plaintiff Chop Foo, LLC, respectfully requests that this Honorable Court take the arguments and issues presented herein under advisement when issuing a ruling in this adversary proceeding.

November 6, 2023

**CHOP FOO, LLC**

By: /s/ Timothy J. McCaffrey
EVERSHEDS SUTHERLAND (US) LLP
Timothy J. McCaffrey (ARDC No. 6229804)
Emily A. Robins (ARDC No. 6296519)
227 West Monroe Street, Suite 6000
Chicago, Illinois 60606
Telephone: (312) 724-9006
Facsimile: (312) 724-9322
timmccaffrey@eversheds-sutherland.com
emilyrobins@eversheds-sutherland.com

## **CERTIFICATE OF SERVICE**

      I, Emily A. Robins, certify that on November 6, 2023, I caused a copy of the foregoing Pretrial Brief to be filed and served via CM/ECF as follows:

Michael J. Gunderson
The Gunderson Law Firm, LLC
2155 West Roscoe Street
Chicago, Illinois 60618
(312) 600-5000
bankruptcy@chicago.com
*Attorney for Justin S. Fara*


                                                             /s/ Emily A. Robins